IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MARVIS BOWNES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 06-cv-0756-MJR |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

REAGAN, District Judge:

### A. Factual and Procedural Background

Between the Fall of 2002 and the Spring of 2003, Marvis "the Swamp Dog" Bownes was charged in two separate criminal cases in this District. The charge involved in the *first* of those two prosecutions underlies the above-captioned civil proceeding.

In Case No. 02-cr-30115, Bownes waived indictment and pled guilty to one count of transmitting threatening communications in interstate commerce (via telephone) – a violation of 18 U.S.C. § 875(c). By detailed written plea agreement (Doc. 12 in 02-cr-30115), in exchange for concessions from the United States ("the Government"), Bownes waived his right to directly appeal his sentence and waived his right to collaterally attack the sentence pursuant to 28 U.S.C. § 2255 (*id.*, pp. 7-8).

The plea agreement (signed by both Bownes and his attorney, William Stiehl, Jr.) concluded:

> Defendant agrees that this Plea Agreement and Stipulation of Facts constitutes the entire agreement between him and the United States and that no promises, inducements or representations, other than those specifically set forth in this Plea Agreement, were made to induce him to enter into this Plea Agreement.

*Id.*, p. 8.

Bownes also executed a Stipulation of Facts (Doc. 13 in 02-cr-30115) in which he admitted that (a) he was involved in purchasing and reselling real estate in East St. Louis, Illinois, and (b) after a local newspaper reporter (Michael Fitzgerald of the Belleville News-Democrat) published a series of articles indicating that Bownes was fraudulently "flipping" property, Bownes made verbal threats against Fitzgerald in phone calls to Fitzgerald and phone calls to another News-Democrat reporter (George Pawlaczyk).  Specifically, Bownes admitted that – in the September 2002 telephone calls – he threatened to "injure" Fitzgerald (*id.*, p. 2).

Bownes pled guilty on October 2, 2002.  Sentencing was scheduled for January 13, 2003.  Three weeks after the plea, the Court released Bownes on bond awaiting sentencing.  Just prior to the January 13th sentencing date, Bownes requested a continuance.  The Court granted the motion, allowing Bownes to stay on bond until the revised sentencing date – March 7, 2003.  Three days prior to that date, Bownes again asked to continue the sentencing.  The Court again granted the motion, resulting in Bownes continuing on bond until the new date – April 14, 2003.

Five days before *that* date, Bownes – for a third time – moved to continue

the sentencing. The Court again obliged, leaving Bownes on bond until the new date – July 14, 2003.

Just before the July 2003 sentencing hearing, Bownes and Stiehl reported that "serious and substantial differences of opinion" between them warranted Stiehl withdrawing as Bownes' counsel (Doc. 32 in 02-cr-30115). After holding a hearing in June 2003, the undersigned Judge granted the motion and permitted Stiehl to withdraw (Doc. 36 in 02-cr-30115). Attorney Charles Stegmeyer then entered on behalf of Defendant Bownes.

Ultimately, the Court sentenced Defendant Bownes to 30 months in prison. He was allowed to remain on home detention until his sentencing hearing in the second criminal case, Case No. 03-cr-30097. Judgment was entered on July 18, 2003 and amended in September 2003, after a Restitution Order was entered.

Bownes appealed his sentence in both criminal cases. The Seventh Circuit dismissed those appeals in April 2005, finding that Bownes gave up his right to appeal when he executed the plea documents. *United States v. Bownes*, 405 F.3d 634, 638 (7th Cir.), *cert. denied*, *Bownes v. U.S.,* 126 S. Ct. 320 (Oct. 3, 2005).

The Seventh Circuit's mandate was issued on June 1, 2005 and docketed in this Court the following day (Doc. 61 in 02-cr-30115). Sixteen months later, Bownes commenced the above-captioned civil case, attempting to collaterally challenge his sentence in Case No. 02-cr-30115.

B.  Analysis

28 U.S.C. § 2255 authorizes a federal prisoner to ask the court which sentenced him to vacate, set aside, or correct his sentence, if "the sentence was imposed in violation of the Constitution or laws of the United States, or … the court was without jurisdiction to impose such sentence, or … the sentence was in excess of the maximum authorized by law."

Relief under § 2255 is limited.  Unlike a direct appeal, in which a defendant may complain of nearly any error, § 2255 proceedings may be used only to correct errors that vitiate the sentencing court's jurisdiction or are otherwise of constitutional magnitude.  *See, e.g., Corcoran v. Sullivan*, 112 F.3d 836, 837 (7th Cir. 1997)(§ 2255 relief is available only to correct "fundamental errors in the criminal process").

As the Seventh Circuit has declared, § 2255 relief "is appropriate only for an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice."  *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004), *citing Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991).  *Accord Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996)("… relief under 28 U.S.C. § 2255 is reserved for extraordinary situations").

Section 2255 cannot be used as a substitute for a direct appeal *or* to re-litigate issues already raised on direct appeal.  *Coleman v. United States*, 318 F.3d 754, 760 (7th Cir. 2003).  *Accord Theodorou v. United States,* 887 F.2d 1336 (7th Cir. 1989)(§ 2255 petition "will not be allowed to do service for an appeal.").

Bownes' § 2255 petition advances five claims:

1. Bownes' sentence resulted from a guilty plea "unlawfully induced by duress and … not made voluntarily with understanding of the nature of the charges and consequences of the plea."

2. Bownes' conviction was obtained "because the government seized records and evidence based on unconstitutional searches and seizures."

3. Bownes was denied effective assistance of counsel.

4. Bownes was denied his "right to appeal."

5. The prosecution "failed to disclose favorable evidence" to Bownes.

Doc. 2-1, pp. 7-8. All five of these grounds are meritless, and Bownes has failed to demonstrate any entitlement to relief under § 2255.

As a threshold matter, although the parties' briefs do not discuss it, Bownes' § 2255 petition appears to have been timely filed. Here, the one-year limitations period for seeking § 2255 relief began to run when the United States Supreme Court denied Bownes' petition for certiorari on October 3, 2005. *See Robinson v. United States*, 416 F.3d 645, 648 (7th Cir. 2005)("Finality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires."). *See also Gildon v. Bowen*, 384 F.3d 883, 885 (7th Cir. 2004), *citing Clay v. United States*, 537 U.S. 522, 527 (2003). Bownes moved to vacate or correct his sentence on October 3, 2006.

The next question is whether Bownes' waiver of the right to collaterally attack his sentence bars this § 2255 petition. The law of this Circuit instructs that a § 2255 waiver in a plea agreement is fully enforceable "unless the waiver was involuntary or counsel was ineffective in negotiating the [plea] agreement." *Bridgeman v. United States*, 229 F.3d 589, 591 (7th Cir. 2000).

In *Mason v. United States*, 211 F.3d 1065, 1069 (7th Cir. 2000), *cert. denied*, 531 U.S. 1175 (2001), the Seventh Circuit emphasized:

> [W]e reiterate that waivers are enforceable as a general rule; the right to mount a collateral attack pursuant to § 2255 survives *only with respect to those discrete claims which relate directly to the negotiation of the waiver.*

*Id.* at 1069, *quoting Jones v. United States*, 167 F.3d 1142 (7th Cir. 1999)(emphasis in original).

Therefore, the undersigned Judge must explore the nature of Bownes' claims to determine if his challenge relates to the negotiation of the waiver. Then, only if Bownes has shown that the § 2255 waiver was not knowingly or voluntarily made or that he had ineffective counsel in *negotiating* the waiver does he have any opportunity to secure relief under § 2255.

Review of the transcript from the change of plea hearing scotches Bownes' contentions on both fronts. His plea was knowingly and voluntarily made, <u>and</u> he had effective assistance of counsel in negotiating the plea.

As to the <u>knowing</u> nature of the waiver contained with the plea agreement,

the undersigned Judge carefully explored with Bownes the consequences of the plea agreement. Bownes acknowledged his understanding of and acceptance of those consequences. The Court flagged the importance of this issue immediately by explaining (Plea Transcript, p.3):

> Q. Now Mr. Bownes, the purpose of our meeting today is for me to confirm that you want to indeed change your plea from not guilty to guilty, and to make sure that that decision on your part is completely knowing and voluntary, is without duress, and that you understand all the ramifications of that. All right? If at any time during this proceeding you have a question, you just let me know and I will do my best to answer it. If at any time during this proceeding you want to speak to Mr. Stiehl confidentially, you let me know and you can go to side bar and speak to him, ok?
>
> A. Yes, sir.

The Court then explained to Bownes, at length, what it meant to plead guilty to an information, including what rights he would be giving up by doing so (*Id.*, pp. 4-5). After Bownes acknowledged that he understood all those rights and consequences, the undersigned Judge inquired whether "any threats or promises" had been made to induce Bownes to waive indictment and plead via information, to which Bownes answered "No, sir." (*Id.*, p. 5). Bownes then acknowledged that he *had* reviewed the information with his attorney, and he *did* understood what he was charged with thereunder (*Id.*, p. 6).

A series of pointed questions followed, zeroing in on Bownes'

<u>legal representation</u>.  Bownes clearly indicated that he was pleased with his attorney's advice and actions, and he affirmed that his attorney had *not* failed to do anything Bownes asked or desired of him (*Id.*, p. 7):

> Q. Now I want to ask you some questions about your counsel, Mr. Stiehl.  Are you fully satisfied with the counsel, representation and advice that Mr. Stiehl has given you in your case?
>
> A. Yes, sir.
>
> Q. Has he done everything that you have asked him to do with respect to defense of your case?
>
> A. Yes, sir.
>
> Q. Is there anything that Mr. Stiehl has refused to do or failed to do which you asked him to do?
>
> A. No, sir.

Further bolstering the conclusion that Bownes had a good grasp of the legal proceedings and the consequences of pleading guilty (thus increasing the chance that his plea was <u>knowingly</u> made) are his responses in the plea colloquy he had with the undersigned Judge in the related/separate criminal case (Case No. 03-cr-30097, sometimes referred to as the "fraud" case).  In *that* colloquy, Bownes spoke up to remind the undersigned Judge about the procedural status of the case, thereby revealing his understanding that he was pleading guilty to an *information* as opposed to an indictment (Transcript, pp. 4-5).  After that exchange, the Court even noted (*id.*, p. 5): "Your pointing that out makes it clear to me that you are aware of what is going on," to which

Bownes responded, "Thank you, Your Honor."

Additionally, during the plea colloquy in the fraud case, the Court stopped the hearing so that Bownes could confer with his counsel on an error which Bownes alone had noticed (counsel and the Court had missed it).  Specifically, Bownes recognized that the plea agreement in the fraud case contained a typographical error, apparently resulting from the USA's "cut and paste" in preparing the agreement.  The plea agreement erroneously referred to recovery of assets "from the illegal sale of controlled substance" instead of "from the illegal acts" with which Bownes was charged (his case involved no controlled substances).  *See Transcript*, pp. 9-10.  Counsel agreed that the language was incorrect and changed page 12 of the plea agreement accordingly.  Bownes' actions and comments revealed that he fully knew and understood the plea proceedings in the fraud case. He was not – and is not – an unsophisticated or ignorant defendant caught up in a process beyond his ken.

Turning back to the threat case (02-cr-30015),a series of questions fleshed out the <u>willing</u> and <u>voluntary</u> nature of Bownes' guilty plea, starting with the pointed question whether Bownes actually *wanted* to plead guilty (*id.,* p. 7).

> Q. My understanding is that you want to change your plea from not guilty to guilty today.
>
> A. Yes.

The undersigned Judge then detailed the various provisions of the plea agreement, and discussion turned to the estimate of the actual sentence Bownes would

receive. Bownes' counsel requested (and the Court allowed) a break in the proceeding to further discuss that issue with his client in private. After the break, the Court delineated for Bownes the effect a prior conviction (on a charge relating to failure to have a FOID card) would have on his criminal history category. Ultimately, the Court queried (*id.*, p. 10):

> Q. Did you and your attorney have an opportunity to go over this plea agreement in detail and was he able to answer all of your questions regarding it?
>
> A. Yes, sir.

When asked specifically whether he understood the mechanics of a potential "5K1.1" or "Rule 35" sentence reduction (which the Court had laid out for him), Bownes responded, "Absolutely, Your Honor" (*id.*, p. 11). Similarly, Bownes indicated that he understood what concessions he was making – including any right to appeal or challenge his sentence – in exchange for certain concessions by the Government, which were articulated in detail on the record (*id.*, pp. 11-12).

The undersigned Judge explored Bownes' appreciation of the consequences of waiving his right to challenge his sentence. For example (*id.*, pp. 12-13):

> Q. What this paragraph also means is that the Government has a right to appeal, but you don't. Do you understand that?
>
> A. Yes, sir.
>
> Q. Okay. Let's take this hypothetical because I want to make sure you understand.... You

> understand the Government can appeal that if they want to and tell the Appellate Court at Chicago that Reagan made a mistake.... and you cannot appeal it?
>
> A. Yes, sir.
>
> Q. Okay. You are willing to do that?
>
> A. Yes, sir.

The Court addressed the supervised release aspects of the sentence and the requirements of such release, such as the fact Bownes could never own a weapon, might be subject to drug and alcohol testing, and would have to report to a probation officer. Bownes acknowledged that he understood all of that (Plea Transcript, p. 14).

The Court again inquired whether Bownes' decision to execute the plea agreement, containing the various terms, waivers and concessions, was completely voluntary (*id.*, p. 15-16):

> Q. Has anyone, including your attorney, family, friends, ... in any way used duress or made any promises or forced you to plead guilty in this case?
>
> A. No sir, Your Honor.
>
> Q. Are you pleading guilty of your own free will because you are, in fact, guilty...?
>
> A. Yes, sir.
>
> Q. Has anyone, including your attorney, ... made any different promises or assurances or guarantees to you outside of what is in the agreement to plead guilty?

> A. No, sir.

The Court further verified that Bownes <u>knowingly</u> desired to proceed with the guilty plea by repeating, on an individualized basis, many of the rights Bownes was giving up if he went forward with the plea agreement. That colloquy contained the following exchange (*id.*, pp. 18-20):

> Q. Okay. I want to go over now the rights that you gives up by pleading guilty to the Information. These are your Constitutional rights. You understand that you have a right to an open, public, and speedy jury trial, and you are giving up that right?
>
> A. Yes, sir.
>
> ….
>
> Q. You are giving up your right to make Constitutional challenges in your case. For example, let's say that your arrest was illegal, there was an improper line up, an improper search and seizure, or an improper interrogation of you. You are giving up your right to challenge all of those things from a Constitutional basis.
>
> A. Yes, sir.

After stating that he understood and wished to give up all of those rights as part of the plea agreement, the Court pointedly asked Bownes to "tell me in your own words what you have done wrong that leads you to come before me and want to change from not guilty and to give up all of the rights … and instead plead guilty" (*id.*, p. 20).

Bownes responded that, in fact, he *had* "made those threats," that he was

"sorry" that he had, and that he wanted "to take full responsibility" for his actions (*id.*, pp. 20-21). Moreover, after the Government placed on the record a complete factual basis for the charges, the Court asked Bownes if that was all true, to which Bownes replied: "Yes, sir, it is true and accurate" (*id.*, p. 23). And he agreed that the Government could prove it all beyond a reasonable doubt (*id.*).

Having asked Bownes to confirm that it was his signature on page 8 of the plea agreement, which Bownes did, the Court asked whether Bownes had "understood the proceedings and all of the questions so far" (*id.*, p. 24). Bownes answered "Yes, sir, Your Honor." As to whether he had any questions, Bownes said "No, sir."

Finally, the Court gave Bownes one last chance to interpose a question, request clarification, or express any desire to *not* proceed with the plea. Indeed, the Court clearly warned Bownes that *if* he went forward with the guilty plea, he could not later change his mind and try to un-do his action (*id.*, pp. 24-25).

> I am about to ask you how you intend to plead. Before I do that though, I want you to know that I think you have understood the proceedings. I think you and I have had a good conversation back and forth. I am convinced that you know what you are doing, so I am going to tell you now that I will accept your guilty plea. Knowing that, you should understand that if you *do* plead guilty, that you are stuck with it. It is written in stone and you can't change your mind.

Having all that spelled out quite carefully, having admitted to actually committing the charged crime, and having been expressly admonished as to the consequences of his plea, Bownes elected to go forward. Manifesting neither confusion

nor hesitation, Bownes pled guilty.

The record is devoid of evidence to support the claim that Bownes executed the plea agreement unknowingly, involuntarily or under duress. Bownes cannot prevail on any of his § 2255 claims, unless he has proven ineffective assistance of counsel *in negotiating the plea agreement*. *Bridgeman*, 229 F.3d at 591 (§ 2255 waiver within plea agreement is fully enforceable "unless the waiver was involuntary or counsel was ineffective in negotiating the agreement"). Bownes has not (and on the record before the Court cannot) make this showing.

Under the familiar standard of *Strickland v. Washington*, 466 U.S. 668 (1984), to prevail on an ineffective assistance claim, a defendant must show both that his counsel's performance was deficient *and* that the deficient performance prejudiced the defense. *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007).

As to the first requirement, trial counsel's performance will not be considered deficient unless it falls below an objective standard of reasonableness. This Court may not judge trial counsel's performance with the benefit of hindsight and must apply a "strong presumption" that counsel's performance fell "within the wide range of reasonable professional assistance." *Id.*, *citing Strickland*, 466 U.S. at 688-89.

The detailed record of the plea colloquy contradicts (and dooms) the contentions that Stiehl improperly pushed Bownes to waive indictment, that Stiehl did not sufficiently explain the plea agreement to Bownes, that Stiehl "forced" Bownes to sign the plea agreement too quickly, that Stiehl somehow "misled" Bownes as to the

sentence he would receive and that Bownes' should not have been made to go forward with the guilty plea while he had lingering questions regarding the applicable sentencing guideline range. Bownes stated <u>under oath</u> that he had no question for the Court, that he understood what he was agreeing to, that he was fully satisfied with Stiehl's advice and representation, that Stiehl had done everything asked of him and that Stiehl had not threatened, promised or coerced Bownes into pleading guilty.

Even if Bownes *had* established deficient performance by counsel (again, he has not), he has demonstrated no prejudice resulting from his decision to plead guilty rather than proceed to trial. Earlier this year, the Seventh Circuit addressed what is needed to show prejudice in the ineffective assistance of counsel context.

> With respect to prejudice, … it is not enough to show that the attorney erred, or that the error had "some conceivable effect on the outcome." [*Strickland*] at 693…. Instead, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Raygoza v. Hulick*, 474 F.3d 958, 962-63 (7th Cir. 2007). *See also Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)(Two-part *Strickland* test "applies to challenges to guilty pleas based on ineffective assistance of counsel," and prejudice prong of that test "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.").

Bownes has not satisfied the *Strickland* standard, so his assertion of

ineffective assistance of counsel fails. He has demonstrated neither that Stiehl's performance fell below an objective standard of reasonableness nor that he (Bownes) was prejudiced thereby.

Moreover, the Court finds it telling that Bownes never sought to withdraw his purportedly rushed and ill-advised guilty plea, despite the fact he had *nine months* between pleading guilty and being sentenced, during which time he replaced Stiehl with new counsel, and all but 3 weeks of which he was released on bond.

### C. Conclusion

Bownes has failed to show that his plea was involuntary, unknowing or the product of duress. Bownes has failed to show that his trial/plea counsel (Mr. Stiehl) was ineffective.

In paragraph 27 of the plea agreement, Bownes waived "his right to challenge his sentence or the manner in which it was determined, including any order of restitution, in any collateral attack, including but not limited to a motion brought under Title 28, United States Code, Section 2255."

The Court finds that waiver valid and enforceable. The Court need not conduct any evidentiary hearing. *See Almonacid*, 476 F.3d at 521 (evidentiary hearing not required on § 2255 petition if the motion, the files and the records conclusively show that the petitioner is entitled to no relief); *Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir. 2002)(to obtain hearing on § 2255 ineffective assistance claim, petitioner must present "detailed and specific affidavit" showing that petitioner has

"actual proof of the allegations").

For all these reasons, the Court **DENIES** Bownes' § 2255 petition (Doc. 2, with supporting memorandum at Doc. 4 and reply brief at Doc. 14) and **DISMISSES** this case.

IT IS SO ORDERED.

DATED this 8th day of June 2007.

s/ Michael J. Reagan  
MICHAEL J. REAGAN  
United States District Court